Susannah M. Lund (SBN #250665)
Law Office of Susannah M. Lund
702 Mangrove Ave #320
Chico, CA 95926
Telephone: (530) 864-2869
susannah@mailfence.com
Attorney for Plaintiff Eric Lund

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC LUND,<br><br>                Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, K. MURPHY, and BRIAN DAVIS,<br><br>                Defendants. | No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## JURISDICTION

1. This is an action for damages brought under 42 U.S.C. §1983 for violations of Plaintiff's rights under the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. Subject matter jurisdiction exists pursuant to 28 U.S.C. §1331 and §1343 based on 42 U.S.C. 1983 and questions of federal constitutional law. This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, as those claims are interrelated with Plaintiff's federal claims and arise from a common nucleus of operative facts, such that simultaneous adjudication furthers the interest of judicial economy.

2. The Court has personal jurisdiction in this case because all Defendants reside and/or have a place of business within the State of California.

1
Complaint and Demand for Jury Trial

## VENUE

3. Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within the Central District of California.

## PARTIES

4. Plaintiff Eric Lund ("LUND") is an individual and was a resident of the State of California at all relevant times herein.

5. Defendant K. Murphy ("MURPHY") was, at all relevant times herein, an Officer with the California Department of Corrections and Rehabilitation, assigned to the Investigative Services Unit at the California Rehabilitation Center in Norco, CA.

6. Defendant Brian Davis ("DAVIS") was, at all relevant times herein, a Lieutenant with the California Department of Corrections and Rehabilitation, assigned to the Investigative Services Unit at the California Rehabilitation Center in Norco, CA.

## COMPLIANCE WITH THE CALIFORNIA GOVERNMENT CLAIMS ACT

7. Plaintiff LUND complied with the California Government Claims Act (Govt. Code §§810-996.6) by filing a claim with the State of California on October 28, 2020. The Claim was rejected by California Department of General Services on December 28, 2020.

## GENERAL ALLEGATIONS

8. In May of 2020, Plaintiff LUND was an inmate in the California Department of Corrections and Rehabilitation ("CDCR"), assigned to a Level 2 dormitory housing unit at the California Rehabilitation Center ("CRC") in Norco, CA. Although COVID-19 caused many of the institution's facilities to be closed or limited during this period, LUND still had freedom of movement and communications with other inmates within his dorm. He had a job, had friends, and was involved in CDCR programming. In addition, LUND was simultaneously completing 40 college units in a single semester from four different correspondence colleges/universities.

9. Prior to May 4, 2020, LUND had never experienced any type of interference with his legal mail. He never had legal mail delivered to him already opened. CDCR's usual procedure of calling LUND for mail pick up and then opening legal mail in his presence to check for contraband had always been followed.

10. LUND always stored each piece of legal mail inside of its corresponding envelope, each of which was always prominently marked as confidential legal mail. LUND did not commingle personal correspondence in with his legal correspondence. LUND then stored those pieces of legal mail inside his locker.

11. On or about May 4, 2020, Defendant MURPHY executed a search of LUND's bunk space and seized a large quantity of LUND's mail, including legal mail. Not all mail was seized, but *all legal mail* was seized. The seized legal materials included, among other matters, correspondence about civil litigation that was pending against the state, as well as his criminal appeal.

12. During the seizure, LUND gave MURPHY notice that she was seizing his legal mail and pointed out that it was clearly marked as such on the outside of the relevant envelopes. LUND asked MURPHY to not remove the documents from his presence.

13. MURPHY responded to LUND, saying, "Apparently you forgot you are in prison." MURPHY did not examine the legal mail in LUND's presence for contraband. She simply bagged it up and took it away with her.

14. After the search, LUND was provided with a carbon copy of a CDC 1450 "Search Record," but the area on the receipt where MURPHY was to document to confiscated property was left blank.

15. After the seizure, LUND tried to obtain a CDCR 602 "Inmate Appeal" form to file a grievance, but there were no forms stocked in the usual spot and COVID-19 lockdown protocols prevented him from obtaining a copy elsewhere. LUND asked his attorney to mail him blank copies of the CDCR 602 form.

16. After receiving the requested forms in the mail, LUND filled out a CDCR 602 "Inmate Appeal" along with a CDCR 1858 "Rights and Responsibility Statement" detailing

the grievance and reporting MURPHY's actions as misconduct. LUND placed the two forms into the dedicated box in his dorm at CRC on or about the morning of May 10, 2020.

17. On or about the afternoon of May 10, 2020, approximately one week after the legal mail seizure, LUND was called to retrieve all the mail that was seized by MURPHY. LUND asked MURPHY what the search and seizure was all about. MURPHY responded that it was part of an "ongoing investigation." MURPHY gave LUND another CDC 1450 "Search Record." This CDC 1450 said "property returned" but did not specify what was originally taken. The receipt reflected that no contraband was seized from LUND, and that the purpose of the original seizure was "investigation/review."

18. On or about May 11, 2020, a female civilian employee, along with the on-duty dorm guard, Officer C. Morrison, called LUND over to the box where he had deposited his 602 grievance the previous morning. LUND was asked if he wanted to withdraw his 602 since his property was returned to him the previous afternoon. LUND believed they were annoyed with him, and he felt pressured to withdraw the grievance. Nonetheless, LUND responded that he did not wish to withdraw because the issue was not the mere return of his property, it was that his legal correspondence was seized in the first instance.

19. On or about May 13, 2020, LUND's 602 was rejected. The reason stated was that LUND failed to attach a copy the "Search Record" to his 602. When LUND had filled out his 602 form, he wrote that he had received a "Search Record" receipt after MURPHY's seizure but that he could not provide a copy with his grievance because COVID-19 lockdown protocols prohibited his access to the library copy machine. The rejection advised LUND that he could send the original to his assigned counselor for copying. LUND did not want his original evidence to enter CRCR's hands if he did not have a copy for himself. Therefore, LUND mailed the original receipt to his attorney and asked for copies to be returned to him.

20. During this time, LUND received three more pieces of legal mail that were delivered to him having already been opened, outside of his presence. The first piece of legal mail was from his civil attorney, clearly marked as such on the outside of the envelope. CDCR stamped this envelope "Opened in Error & Resealed by CRC Mail Room." The second piece

of legal mail, from the same civil attorney, was simply delivered already opened without any stamp, despite the clear envelope markings that it was confidential legal mail. The third piece of legal mail was from LUND's criminal appeal attorney, employed with a different law firm. Again, the outer envelope was clearly marked as confidential legal mail from an attorney. Again, this piece of mail was simply delivered already open, without any CDCR stamp. LUND believes that these three pieces of legal mail were opened by MURPHY or at her direction.

21. On or about May 26, 2020, LUND had completed an amended 602 grievance, inclusive of the requested Search Record copy. The amended 602 contained additional allegations of the ongoing improper legal mail deliveries. LUND was prepared to deposit it in his dorm room grievance box that day. But prior to his submission, MURPHY came in to LUND's bunk space and arrested him on three felony charges: (1) Cal. Pen. Code § 182 Conspiracy, (2) Cal. Pen. Code § 4573.5 Unlawfully Bringing a Controlled Substance into a Prison, and (3) Cal. Pen. Code § 4573.6 Unlawful Possession of a Controlled Substance in Prison. In addition, LUND was charged with a Serious Rules Violation for Cal. Code Regs. tit. 15 § 3016(d) Conspiracy to Introduce a Controlled Substance into a State Prison for Distribution.

22. There was no warrant for LUND's arrest and there was no probable cause identified in MURPHY's report.

23. The gravamen of the charges was that an identified woman, *not* one of LUND's attorneys, had sent LUND a greeting card that MURPHY alleged field tested positive for morphine.

24. MURPHY was the only one who investigated and the only one who allegedly observed the positive field chemical test.

25. Both MURPHY and Defendant CRC Lieutenant Brian DAVIS participated in the arrest. Both are listed in the Incident Package as "Staff Involved." Both wrote narrative reports for the Incident Package.

26. In addition, DAVIS was responsible for classifying the incident. In response to

the FELONY PROSECUTION LIKELY inquiry in a form dated May 26, 2020, DAVIS responded "YES."

27. MURPHY's report contained information demonstrating untruthful allegations and a fabrication of evidence. In addition, her report reflected an improperly performed field chemical test that disregarded the manufacturer's clear advisement that a failure to follow the precise procedures would yield unreliable results.

28. Neither MURPHY's nor DAVIS' report included an allegation of distribution. Neither report included an allegation of an agreement made in furtherance of a conspiracy. Neither report alleged that the tested substance was either preserved or sent for outside toxicology confirmation.

29. The greeting card alleged to have been laced with morphine was said to have entered the prison on April 28, 2020. LUND was not arrested until almost a month later, on May 26, 2020. Immediately upon arrest, DAVIS found LUND to be an "immediate threat to the safety of self or others" and that he "endangers institution security." No explanation was given as to why LUND was not considered an "immediate threat" for nearly a month after the alleged incident, but then suddenly deemed a danger on May 26, 2020, with no new allegations of criminal conduct . Immediately upon arrest, DAVIS signed a report ordering LUND to be placed in Administrative Segregation Unit ("Ad Seg") at a different prison.

30. That same day LUND was placed on a bus and transferred to the Richard J. Donovan Detention Center in San Diego, CA ("RJD"). LUND was not tested for COVID-19 before being transferred. LUND was not given a mask to wear on the bus while being transported. During the transport, LUND was exposed to other unmasked inmates, who were not from his dorm, as well two CDCR guards who were also unmasked.

31. Once at RJD, LUND was held in Ad Seg until the end of July 2020. In solitary confinement, LUND was denied possession of all the personal property he had while at CRC. As a result, he did not have access to his previously prepared, but not yet submitted, amended 602 form that complained of MURPHY's improper seizure of his legal mail.

32. On or about June 9, 2020, after obtaining a blank copy of the new CDCR 602-1

form that went into effect on June 1, 2020, LUND was finally able to file his amended grievance about MURPHY's improper seizure of his legal mail. This grievance was filed with RJD staff but stamped as received by CRC on June 23, 2020.

33. Thereafter, while still being held in Ad Seg, LUND received a letter from DAVIS, dated June 12, 2020, informing him that the charges against him failed to meet criteria for felony prosecution after review at the institutional level. No explanation was given as to why DAVIS found the charges sufficient for felony prosecution on May 26, 2020, but no longer believed that to be true on June 12, 2020. DAVIS' letter informed LUND that the disciplinary action would, however, still proceed administratively.

34. LUND remained in Ad Seg.

35. A month later, on July 12, 2020, RJD Senior Hearing Official Lieutenant A. Aguirre dismissed the administrative case against LUND, without even holding a hearing. Aguirre found a complete lack of evidence and stated in his report that "the preponderance of the evidence can't possibly prove what it is trying to prove."

36. On or about September 4, 2020, LUND received a disapproval of his legal mail 602-1 grievance. In addition, he received a "Determination of Grievance Against Staff" which found that LUND's complaint did not identify any misconduct by MURPHY. The responses came from CRC staff. The date of rejection was July 21, 2020. No explanation was provided about why it took a month and a half to get the rejection letter to LUND.

37. On or about September 25, 2020, LUND filed a 602-2 second level review of his legal mail grievance with the Office of Appeals in Sacramento. LUND did not receive a response to this filing prior to his release from CDCR on October 10, 2020.

38. At all times stated herein, MURPHY was acting under the color of authority.

39. At all times stated herein, DAVID was acting under the color of authority.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 - First Amendment – Free Speech with Legal Counsel**

**(Defendant: K. Murphy in her personal capacity)**

40. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

41. While incarcerated, LUND had confidential correspondence sent to him by two different attorneys, one civil and one criminal. Each piece of mail was properly marked reflecting the sending attorney and the fact that it was confidential legal mail. MURPHY's seizure of this legal mail from LUND's possession, without inspection for contraband in his presence, and retention of this mail until LUND filed a grievance was a violation of LUND's First Amendment right to free speech with his legal counsel.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 - Fourth Amendment – Unreasonable Seizure of Legal Mail**

**(Defendant: K. Murphy in her personal capacity)**

42. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

43. LUND had a reasonable expectation of privacy in the written communicative contents of his legal mail. While MURPHY did have a legal right to inspect for contraband, no such inspection occurred in LUND's presence. MURPHY's seizure of LUND's open legal mail from his possession and retention of that legal mail for nearly a week, violated his Fourth Amendment right to be free from unreasonable seizures.

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 - Sixth Amendment – Criminal Counsel**

**(Defendant: K. Murphy in her personal capacity)**

44. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

45. MURPHY's seizure of LUND's legal mail from his *criminal* attorney, and retention of that legal mail for nearly a week, violated his Sixth Amendment right to criminal counsel. In addition, the opening of his legal mail from his criminal attorney on or about May

21, 2020, by MURPHY or at her direction, was a violation of LUND's Sixth Amendment right to counsel.

## FOURTH CAUSE OF ACTION

**Cal. Const. art. I, § 2 / Cal. Civ. Code § 52.1 – Free Speech with Counsel**

**(Defendant: K. Murphy in her personal capacity; CDCR as vicariously liable)**

46. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

47. MURPHY's seizure and removal of LUND's legal mail — mail that had already been cleared of contraband upon initial delivery — violated his right to free speech under Article I, section 2 of the California Constitution.

48. MURPHY's seizure of legal mail was intimidating on two levels. First, it was retaliatory for LUND's filing of a grievance and report of misconduct. Second, it is intimidating for an inmate to have open communications with legal counsel if he believes those communications are being read by third parties. MURPHY's continuation of the seizure of clearly marked legal mail, despite LUND's specific notice that she was seizing confidential legal mail, demonstrate a reckless disregard for the deprivation of LUND's constitutional rights in violation of the Bane Act codified by Cal. Civ. Code § 52.1.

49. CDCR, the public agency employer of MURPHY, is liable for the injuries caused by its employee.

## FIFTH CAUSE OF ACTION

**Cal. Const. art. I, § 13 / Cal. Civ. Code § 52.1 – Unreasonable Seizure of Mail**

**(Defendant: K. Murphy in her personal capacity; CDCR as vicariously liable)**

50. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

51. LUND had a reasonable expectation of privacy in the written communicative contents of his legal mail. MURPHY's seizure and removal of LUND's open legal mail from

his possession violated his right to be free from unreasonable seizures under Article I, section 13 of the California Constitution.

52. MURPHY's intimidating seizure of LUND's legal mail demonstrates a reckless disregard for the deprivation of LUND's constitutional rights in violation of the Bane Act codified by Cal. Civ. Code § 52.1.

53. CDCR, the public agency employer of MURPHY, is liable for the injuries caused by its employee.

## SIXTH CAUSE OF ACTION

**Cal. Const. art. I, § 15 / Cal. Civ. Code § 52.1 – Criminal Counsel**

**(Defendant: K. Murphy in her personal capacity; CDCR as vicariously liable)**

54. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

55. MURPHY's seizure and removal of LUND's legal mail from his criminal attorney violated his right to counsel under Article I, section 15 of the California Constitution.

56. MURPHY's intimidating seizure of LUND's legal mail demonstrates a reckless disregard for the deprivation of LUND's constitutional rights in violation of the Bane Act codified by Cal. Civ. Code § 52.1.

57. CDCR, the public agency employer of MURPHY, is liable for the injuries caused by its employee.

## SEVENTH CAUSE OF ACTION.

**Negligence - Violation of Cal. Code Regs. tit. 15 §§ 3143 and 3144, as well as Cal. Pen. Code §§ 2600 and 2601(b) – Departmental Handling of Confidential Mail**

**(Defendants: K. Murphy in her personal capacity; CDCR as vicariously liable)**

58. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

59. MURPHY's removal of LUND's confidential legal mail from his possession, as

well as the opening of subsequent legal mail prior to delivery, was a breach of the mandatory duties set forth in Cal. Code Regs. tit. 15 §§ 3143(a) and 3144, as well as Cal. Pen. Code §§ 2600 and 2601(b). This breach caused LUND's ability to speak freely in written communication with counsel to be severely hampered. This was especially harmful considering inmates were deprived of in-person legal visits and non-emergency use of phones at the time, due to COVID-19 lockdown protocols.

60. CDCR, the public agency employer of MURPHY, is liable for the injuries caused by its employee.

## EIGHTH CAUSE OF ACTION

## 42 U.S.C. § 1983 – First Amendment – Retaliation for Free Speech

### (Defendant: K. Murphy in her personal capacity)

61. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

62. Immediately after MURPHY's unlawful seizure of LUND's confidential legal mail, LUND engaged in an inmate grievance process against MURPHY, which is a form of free speech protected by the First Amendment.

63. During this grievance process, MURPHY retaliated against LUND by arresting him on three felony charges without a warrant and without probable cause. This arrest resulted in LUND's transfer out of his Level 2 housing dorm and into solitary confinement in the Segregated Housing Unit of another prison for 47 days until the Senior Hearing Officer dismissed the charge without holding a hearing due to a total lack of evidence. That MURPHY, the arresting officer, is the *same person* whose conduct LUND was *simultaneously* reporting, demonstrates the requisite causal connection to establish retaliation.

64. The arrest happened during LUND's college finals week for his four different colleges/universities. This was particularly retaliatory. As a CDCR employee, MURPHY would have been aware that an inmate's completion of 40 college credits in a single semester would mean a substantially earlier release from prison. On the date of LUND's arrest

11
Complaint and Demand for Jury Trial

MURPHY was aware of the number of courses LUND was completing because she had seized communications reflecting such approximately 3 weeks prior. LUND believes that the timing of the arrest was intended to disrupt his finals so he would not complete the courses and would not achieve an early release.

65. A false arrest for three felonies that was so lacking in probable cause that it did not get referred to the district attorney and was administratively dismissed for a complete lack of evidence, is an act that would chill a person of ordinary firmness from ever filing another grievance against a CDCR employee again. LUND suffered humiliation and reputational injury being detained in a phone booth sized cell for hours as his dormmates observed his arrest and subsequent exodus. Being thrown into solitary confinement caused LUND to suffer great loss in access to education, programming, personal property, commissary purchases, freedom of movements, daily showers, friendships he had developed in the dorm, and daily phone calls with his wife and children.

66. MURPHY's false arrest did not advance a legitimate goal of the institution because there was no evidence that any crime was ever committed. Moreover, the unnecessary transfer of LUND during the COVID-19 pandemic, without a mask and exposed to other unmasked inmates and guards, did not advance a legitimate goal of the institution because LUND did not pose a threat to the institution.

### NINTH CAUSE OF ACTION

**42 U.S.C. § 1983 - Fourth Amendment – Unreasonable Seizure of LUND**

**(Defendants: K. Murphy and Brian Davis in their personal capacities)**

67. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

68. LUND had a right to not be seized without warrant or probable cause. The false arrest of LUND by MURPHY and DAVIS without cause to meet the low threshold of an administrative rules' violation hearing, let alone probable cause to refer for criminal prosecution, was an unreasonable seizure in violation of the Fourth Amendment.

## TENTH CAUSE OF ACTION

## 42 U.S.C. § 1983 – Fourteenth Amendment – Malicious Prosecution

### (Defendant: K. Murphy and Brian Davis in their personal capacities)

69. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

70. MURPHY and DAVIS caused LUND to be administratively prosecuted for a rules' violation. The lack of evidence of distribution, the lack of evidence of an agreement to conspire, the lack of a lab report concluding that there was ever any morphine on the greeting card, the fabricated evidence, the false statements in the reports, and the improper use of a field test despite the manufacturer's warning of a false result when not following protocol, all establish a lack of probable cause for LUND to have been administratively prosecuted.

71. LUND achieved favorable termination of the administrative prosecution because the Senior Hearing Officer was so dissatisfied with the evidence presented, he did not even hold a hearing before dismissing the charge against LUND.

72. The arrest was initiated with the intent to retaliate against LUND's exercise of the right to file a grievance, with an intent to cause LUND to be deprived of his personal liberty while in solitary confinement, with an intent to deprive LUND of associations with dormmates and other humans, with an intent to deprive LUND of his ability to pursue an occupation through education, and with deliberate indifference to LUND's health and safety with an unnecessary, unmasked, transport during a pandemic, while commingled with people outside his dorm. As such, MURPHY and DAVIS violated LUND's substantive due process right to be free from malicious prosecution.

## ELEVENTH CAUSE OF ACTION

**Cal. Const. art. I, § 13/ Cal. Civ. Code § 52.1 – Unreasonable Seizure of LUND**

**(Defendant: K. Murphy and Brian Davis in their personal capacities; CDCR as vicariously liable)**

73. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

74. MURPHY's and DAVIS' false arrest of LUND without warrant and without probable cause was a violation of his right to be free from unreasonable seizures under Article I, section 13 of the California Constitution.

75. An arrest is coercive. MURPHY's fabrication of evidence, as well as her misuse of a chemical field test in disregard of express warnings of false results by the test's manufacturer if proper procedures are not followed, demonstrates a reckless disregard for the deprivation of LUND's constitutional rights in violation of the Bane Act codified by Cal. Civ. Code § 52.1.  In addition, DAVIS' order that LUND be immediately shipped off, during to a pandemic, to a different prison and into solitary confinement on the same set of facts that he later determined to be insufficient for prosecution demonstrates a reckless disregard for LUND's constitutional rights in violation of the Bane Act.

76. CDCR, the public agency employer of MURPHY and DAVIS, is liable for the injuries caused by its employees.

## TWELFTH CAUSE OF ACTION

**False Arrest**

**(Defendant: K. Murphy and Brian Davis in their personal capacities; CDCR as vicariously liable)**

77. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

78. MURPHY and DAVIS jointly took part in LUND's unlawful arrest without a warrant and without probable cause. As a result, LUND was injured. He was detained for 3 hours in a phonebooth-sized cell in front of his dormmates, causing humiliation, reputational damage, and anxiety. After the unlawful arrest, LUND was transferred during a high-risk pandemic without a mask and exposed to unmasked guards and other unmasked inmates not from his dorm during transport. Moreover, he was falsely imprisoned for 47 days in solitary

confinement before he was brought to a hearing, which the Senior Hearing Officer refused to even hold due to the dearth of evidence. LUND lost human contact, his personal property, his educational opportunities, his programming, his job, recreation, yard, daily showers, access to his legal files, and all telephone contact with his wife and children.

79. CDCR, the public agency employer of MURPHY and DAVIS, is liable for the injuries caused by its employees.

### THIRTEENTH CAUSE OF ACTION

### Abuse of Process

**(Defendant: K. Murphy in her personal capacity; CDCR as vicariously liable)**

80. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

81. MURPHY had an ulterior motive in arresting LUND — retaliation for filing a grievance against her, as well as a desire to separate him from his personal paperwork so that he could not exhaust his administrative 602 form remedies in a timely manner. The arrest was a willful act done in a wrongful manner, without probable cause. This was an abuse of process.

82. CDCR, the public agency employer of MURPHY, is liable for the injuries caused by its employee.

### FOURTEENTH CAUSE OF ACTION

### Negligence – Violation of Cal. Code Regs. tit. 15 § 3320(a)

**(Defendant: K. Murphy and Brian Davis in their personal capacities; CDCR as vicariously liable)**

83. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

84. LUND was not provided with the Rules Violation Report ("RVR") written by MURPHY and classified by DAVIS, until June 1, 2020. This was 34 days after the alleged date the information leading to the charges was discovered on April 28, 2020.

85. Cal. Code Regs. tit. 15 §§ 3320(a) requires the RVR to be provided to the inmate within 15 days after the alleged date the information leading to the charges was discovered.

86. MURPHY and DAVIS breached their mandatory duty to timely provide LUND with an RVR.

87. LUND was harmed by an inability to timely gather evidence and statements in his defense.

88. CDCR, the public agency employer of MURPHY and DAVIS, is liable for the injuries caused by its employees.

## FIFTEENTH CAUSE OF ACTION

**Negligence – Improper Execution of a Field Chemical Test**

**(Defendant: K. Murphy in her personal capacity; CDCR as vicariously liable)**

89. LUND incorporates by reference all paragraphs under the heading "GENERAL ALLEGATIONS" as if fully set forth herein.

90. MURPHY improperly utilized a Narcotics Identification System ("NIK") to chemically test a greeting card for opiates. Her manner of execution disregarded general warnings from the NIK manufacturer that improper execution could create a false result and express warnings that her specific errors would yield unreliable results. LUND was harmed by MURPHY's breach of a duty to follow NIK's proper field-testing protocols when relying on those results to subject someone to an arrest.

91. CDCR, the public agency employer of MURPHY, is liable for the injuries caused by its employee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

92. Compensatory damages, both special and general, to be proven at trial,

93. Punitive damages against MURPHY and DAVIS only,

94. Civil penalties, where authorized by statute,

95. Attorney fees, and

96. Costs.

## JURY DEMAND

97. Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 28, 2021,

Respectfully Submitted,
s/*Susannah M. Lund*
SUSANNAH M. LUND
Law Office of Susannah M. Lund
Attorney for Plaintiff Eric Lund